Mr. Pollack. Good morning. My name is Elon Pollack. I represent the appellate New Image Global in connection with this appeal. As a preliminary matter, we would like this court to reverse and remand this case back to the CIT for a number of reasons, which were stated both in our opening brief and our reply brief. We think that the court committed reversible error by making findings of fact that are, A, not supported by the record, and, 2, as the trial court, in a motion for summary judgment, it's impermissible to make such findings of fact. The reality is that there are genuine issues of material fact if the court's making those findings, and that's reversible error. Basically, this case really concerns the application of a regulation, 19 CFR 158.7, which requires the government, when weighing products like our client's product, that they account for evaporation, which was not the case here. Beginning in 1989, with the adoption of the Harmonized Tariff Code, products like our client's product were not allowed to be sold in the U.S. What do you mean it requires the government to account for evaporation? Just factually, what do you mean? What I mean is when our client's product is imported, it's in a sealed package. It suffers from dissipation and evaporation inside the package from the time it's manufactured to the time it's imported into the United States. When you open the package, volatile gases evaporate. They disappear from the package itself. The specific regulation requires that when we're dealing with a natural product such as the tobacco, that the government is required to make an allowance for the weight to the extent of the reduction by the loss. But how does that support the idea that you should measure it 24 hours later when you have additional evaporation after the thing has been removed from the package? Let me just suggest the following. Number one, that was the lab's procedure. I was about to say that since 1989, customs is required to assess duties based upon the weight of a product. According to Janet Ayers' memo, that was their normal process. She asked them to deviate from their normal process and come up with a different procedure to weigh the tobacco. Is this a factual question or a legal question? What's the proper time and the proper product to weigh? Well, that was the second point I wanted to make, is that we're going to ask this court to either remand for a trial on the merits because of some of these factual issues that came up in this case, or to make a definitive statement about the how and the when to weigh the product. There's no direction. There are no rules. There's nothing. Is it the issue here, when should the product be weighed? At what point? Well, not when it should be weighed, but once you determine when it should be weighed, how it should be weighed. Okay, put the how to the side. Let's get him back to the when. Isn't it clear that valuation of imported goods is made at the point of importation? The specific language that Customs relied on was in the TTV ruling that said, released from Customs custody. Released from Customs custody, in my experience, has two definitions. One is an electronic release from the system saying you're free to pick up your goods, and then the second is when you actually pick up the goods. That's still not clear either. So in terms of when, that becomes a factual issue. Well, you're saying that it ought to be weighed after it's removed from the package, right? Yes. I understand that argument, but I have no idea how that supports the idea that it should be measured 24 hours later. Well, whether it's 24 hours later or some other point in time, Dr. Spingarn did it in 16 hours and came up with even more. Why isn't the right answer immediately when it's removed from the package? Because it's continuing to dissipate, and if you look at the government's- So what? Your product is a wrapper that includes these aerosols, and they're not just there for moisture, they're there for flavoring. It's part of the product, right? That's correct. So if the point is to calculate the excise tax on the weight of the product, then why do you wait until part of the product has evaporated? Well, number one, the government cites the USP-1251, and USP-1251 specifically states that you wait until you weigh a product and you record the weight when it reaches a stable point, specifically. Well, let's say we disagree with that as a matter of law, that you can't- these products contain the aerosols, and that that is something that, as a matter of law, should be included in the weight. Well, you can't- No, no, no. I'm not- I don't want to argue this. This is part of the hypothetical now. Oh, I'm sorry. That's the legal definition we come up with, which is the product that you're importing is a tobacco wrapper that has been treated with these aerosols to add flavor, and what customs needs to do is get the most- I don't want to say the most accurate, because there's no way that we can get some kind of most accurate here. It's because the aerosols are so volatile, but the customs job is to get a suitable weight for that product upon importation, by which I mean you pull it out of the package and weigh it right out of the package. That's my legal definition of when this should be weighed. Now then, where do we go from there with the Court of International Trade's judgment? I'd like to answer that. Specifically, you pull the product out of the package, and according to USP 1251, you put it on the receiver, and it's fluctuating. There's no stable or steady weight, and the customs lab person, Sheila Eng, even testified that you need to have a steady or stable weight in order to take an accurate reading. They weighed it 24 hours. You're not going to help yourself by trying to argue for the 24-hour testimony. I want to know, given the volatility here and the differing methods proposed, which one is ... I understand there are factual issues here, too, but how do we come up with, if we're going to remand this to the CIT if we need to, what we tell her she has to decide as a matter of fact? Customs can weigh the product out of the wrapper when it reaches a steady weight. That's how you determine what the weight is. Let me just emphasize. My hypothetical is, does not allow for delay. You weigh the product out of the wrapper. As a matter of law, what should be taxable here is the product as it exists immediately out of the wrapper. The fact is, if you have evaporation, that cannot be an essential ingredient of the product. You're fighting the hypothetical. I think the question that Judge Hughes is asking is, if in fact the legal rule requires that the weight be determined immediately after it's removed from the package, without any delay, without any weight for stabilization, do you lose your case? I don't think so. Because, number one, you have the regulation that says they have to allow for evaporation. No, no, no. You're still fighting the hypothetical. Answer the hypothetical. Because we don't lose the case because the weight that the government achieved doing the method that it used is greater than the factory weight. It's not possible. But how do we know? Okay, so I have a little bit of an issue with that. How do we know your factory weight is accurate? The government deposed the factory manager who testified specifically about the processes of how they do it. They weighed at least 250 wrappers every single day, and they recorded them daily. They were weighed in a vacuum, right? They used the same O-House scale. They were weighed in a vacuum on the O-House scale, right? When did the vacuum immediately pull out all the aerosols? I'm trying to think. I remember seeing the scale, but I don't believe it does. It would just simply weigh the net material. Can I just ask you to look at Appendix 366? Yes, sir. This is the 30B6 of Felix Hernandez. Who is that? He was the factory manager in Mexico. He's testifying about the weighing method, right? He's talking about the O-House scale, but down about line 16, he says, the scale is protected. It's in an acrylic box to create a vacuum so that it can be precise as possible. I see that, yes. Well, if it's in a vacuum, isn't the vacuum going to expedite the dissipation of the aerosols? I'm not a scientist. I really don't know the answer to that. I don't know the answer to it either, but you're positing this factory weight as some kind of reliable weight that should be weighed against the government's weight, but what if it's not reliable either? This is not saying it doesn't need to go back. This sounds to me like possibly some issues that need to be resolved, although I'm not super convinced yet that we've gotten there. It doesn't sound like you can just point to this and say this is good enough because this one may be extracting the aerosols too, which under my hypothetical, you don't get to do. And it's also not weighing it at the time of importation. I agree. And even the government concedes that the tobacco would lose weight from the time it was manufactured. So it's going to be some loss of weight. Yeah, but maybe the loss of weight was even greater at the factory under your weighing method. Well, then we would be entitled to even a more favorable decision if it's less. No, you wouldn't. If your weights aren't accurate because they've already excluded the aerosols that we think as a matter of law should be included, then your weights aren't relevant. It would be impossible to weigh the evaporation and the escaping gases. You've got a sealed package and you're asking the government to assess the excise tax based on the complete package, including the escape gases. There's no support for the statement that says that these escaping gases are essential components to the product. Assume we reject that notion and that our view is that it's a legal matter. You weigh the product immediately after it's removed from the packet, not in a vacuum, but in ordinary circumstances. It seems to me that your best argument is, well, there's a fact issue here as to whether the factory weight should be relied on as opposed to the government's indirect method because the government's indirect method weighs the gases that would escape immediately on opening the package. That's your best argument. I'm not sure you made it in your brief, but that's your best argument. I'd like to reserve the balance of my time. Unless the court has additional questions. Well, can you respond? I mean, I read your briefs and it seemed to me that your briefs are all in for this post 24-hour period. Let's just assume you're not getting that, that you're not getting the weight that customs did with that first test 24 hours later. Our job is to figure out what's the proper time period, what as a matter of law has to be weighed, and whether there's a material question of fact, not just a dispute, but a material question of fact that renders the CIT's summary judgment deficient. We've already decided, again, hypothetically, but we've already decided 24 hours after opening is not correct as a matter of law. A matter of law, the time period is immediately after opening. Then we're down to, there's a direct method and an indirect method, and then you're saying, I guess, that neither of them are good because they're variant from the factory method, but that wasn't weighed at the time of opening. What's the question of fact under that legal definition of when it should be weighed that we would tell Judge Rastani she needs to decide? Well, again, not to repeat myself, but it seems to me that when you pull the tobacco out of the package and put it on the scale to take a reading, it has to hit a stable point. You get on the scale in the morning, it goes up. I'm confused. So if you can't measure it immediately from removal from package directly because it's just not stable, then why isn't customs resort to an indirect method the best approximation of what we've termed the legal correct time for weighing it? Because it's to the exclusion of the regulation. The regulation requires that they make an adjustment for the evaporation, and the indirect method includes that in the gross weight that it calculates. All right. Well, we'll give you two minutes for rebuttal. Thank you, Your Honor. Should I just remain here? We should sit down. We'll hear from Ms. Josen. Good morning, Your Honor. I'm here to ask for your support. The ex-sign statute here is what is taxed, the product that is taxed here, which is- Let's get to the heart of it. Wait, wait, wait, wait. You have to listen to the questions. The technology is not very conducive for you to hear what we're saying, so you have to try to focus on that. Suppose that you're right, that the product has to be measured immediately on importation and that it has to be measured immediately after being taken out of the package with the result that some of the volatile gases will escape at the moment that it's removed from the package, but you don't have to wait for stabilization or 24 hours to do the measurement. The measurement should be done immediately after it's removed from the package and available for use by the consumer. Let's assume that. If that's correct, isn't there a fact dispute here as to whether the indirect method weighs too much because it includes the gases that escape immediately on package opening and that there's an argument that- a fact issue as to whether the factory weights, which are taken after the product is immediately removed from the package, are a more reliable method even though they're taken in the vacuum? So my question is, isn't there a fact issue here as to which measurement is correct, the government's indirect method or the factory weight method? There is not a fact question with respect to that because, and I point to page 36 of our response brief, the factory weight that new image does- is done by the manufacturer by directly weighing the wrap upon removal from the package, so it's not a stable weight. What new image does at the factory is take the wrap out, put it immediately on the balance scale, so it's fluctuating. So it's not in accordance with any reliable methodology, which is different from how customs did it with the indirect method. Wait. You have to pay attention. You're fighting the hypothetical also. You're saying that the weight immediately upon removal by the package is not the right weight. I'm asking you to assume that is the right way to do it. Isn't there a fact issue as to what the weight is upon immediate removal from the package? Okay. I'm not sure I understand the question then. You can please repeat. I'm asking you to assume that the correct way to measure this is what's the weight when it's immediately removed from the package. Okay? And what I'm asking you is on that assumption, isn't there a fact issue as to whether the government's indirect method or the factory method more accurately arrives at that weight? I don't- that's not a fact question because it's a question of reliable methodology that's being used, which is- which is not- which is- is it a reliable methodology? That's what the question would be then. Is customs methodology using the indirect method, is that reliable and in accordance and based on a scientific methodology? Versus is new images factory weight and how it's conducted, is that based on a scientific methodology and new images factory weight is not, because it's not a stable weight. It's not in accordance with any scientific methodology. And I point to the- What do you mean- what do you mean stable weight? I mean that sounds- It's- Wait. That sounds as though you're saying we have to wait till the weight stabilizes 24 hours later. It sounds as though when you say that you're agreeing with them that you have to measure a stable weight rather than the weight immediately on package opening. It's- what I mean by stable weight is what the USP 1251 for weighing products, what that procedure requires is in order to get an accurate weight, it has to be a steady or stable weight. And when you immediately open the wrap from the packaging and you put it on the scale, it fluctuates because of the dissipating ingredients. It fluctuates. So new images factory weight is not a stable weight that it captures because it's fluctuating. And that's the- And that's- Sorry, can you just stop? I know there's lag in the microphone. That's the reason customs doesn't use a direct method either, right? That's correct. Because if that direct method was scientifically sound for the factory, it would also be scientifically sound in customs lab, and that would be a more legally correct moment in time because it would be moving it in the package, from the package after importation. But your view is that weight can't be measured in the direct method at all. It's just not possible. So my question is, what happens when we're in a situation where it sounds like there's no scientific way to get an actual reliable method of the weight of this product as soon as it's removed from the package? Where do we go from there? Customs indirect method we submit is a reliable and scientifically valid way to weigh this wrap because it's done by- How can that be when there are gases in the package that aren't part of the product that are released when the thing is opened, and your indirect method is weighing those gases that escape upon opening? The gases, again, the indirect method, what it's doing is taking the stable weight of the packaging and subtracting it from the foam. No, the indirect method is weighing the gases that immediately escape upon opening the package, right? It's not weighing that. It's taking the wrapper's weight. There's nothing immediately. Whatever is in the wrapper, what's on the wrapper, what the trial court defined as added this, that's what the product is. It's suitable for that. It's including all of those ingredients for a reason because that is what the product is- You're not answering my question. When you do the indirect method, you are measuring the gases in the envelope that are not part of the product and that escape from the envelope when it is opened, right? There's no factual support that there's any moisture or anything that's in the product, the wrapper itself, that immediately escapes. There's no support. New Image has not pointed to any factual evidence to that point. There's nothing that's in the moisture. It's unsupported that there's droplets in the packaging or anything like that that shouldn't be part of this wrapper. There's no support for that. Can I stop you again? Even if there's droplets actually in the package, that would be subtracted out when you weigh the package. I guess there seems to be, we're talking about some hypothetical notion that we're not sure exists, but it seems logical to us that some of the aerosols may have aerosolized into a gas. When you weigh the whole package before opening, that's still part of the weight. Yes, the droplets that have evaporated off but remain in the package get subtracted out from the weight, but if there's anything, any measurable weight to already aerosolize a gas in the package, that can't be included in your method, right? You're just saying you don't think there's any proof that that exists. If it did exist, hypothetically, your method wouldn't be capturing that. Let me make it as clear as possible. When you weigh the whole package, let's say what's in the package is, or the whole thing is the package and the straw, the wrapper, and then there is some kind of gaseous form in there, and that's included in the weight. The indirect method accounts for the packaging, the straw, any droplets that remain in the package, because that gets weighed with the package, and also by deduction, the weight of tobacco, but those aerosolized gases, if you open it and something comes out, that's not getting captured by the indirect method, if that existed, right? Probably. I'm not sure that's on the record to say that. I'm not a lab technician that would know that offhand here, but again, this is something that was never raised below or even on appeal. New Image has not supported any of this with any kind of factual assertion. Their whole argument has been a moving target since the inception of this case. Well, I understand that. Let me just make it clear. What I'm concerned here is that this was made as a summary judgment decision as a matter of law, and not that there's a bunch of methods out here, and as a matter of fact, there's just the best method that's most scientifically accurate, and the closest is your method. I don't think that the court made that decision as a matter of fact, and it seems like that's a factual question. I will submit that the court did make that decision. I mean, there was no other... No, no, but... New Image doesn't point to any other... Right, but you're not arguing that she made that as a matter of fact, because she did this on summary judgment. If she had actually said, as a matter of fact, I find all of what I just said, we'd be on an entirely different posture here. We'd be reviewing her for clear error. But the question is, did their expert and the other evidence kick up enough dust to show that maybe yours is not the best? That there is a genuine issue of material fact as to whether the factory weight versus the indirect method is the best. I understand this wasn't well-briefed, because your opponent is not really arguing for the factory weight. They're arguing for the post-24 hours weight, which seems to me legally wrong as a matter... So the briefing that concentrates on that is not very helpful, but it still doesn't seem like, as a matter of law, you win, because it seems like that there's still some dispute, as a matter of fact, on that. It may come out the same way. Judge Rossani may say, well, this is closer because of X reasons than the factory weight, because that's unreliable. But she didn't get to that point and make those factual findings. And I get also why she was there, because they weren't arguing that. They were arguing for the 24-hour period. But isn't that a problem with this case? I would say that they haven't argued that, and it is waived at this point. That would be our submission, that they've waived those arguments, and the court does not even need to go there. That aside, the factory weight, it's undisputed that it's not based on any scientific methodology. So Greenman, I submit, would not do anything there, because it's not based... The methodology that is used or the protocol that's used to weigh these wrappers would be analyzed under Daubert and whether it's a reliable scientific methodology. Here, the indirect method was the factory weight is not. So there's really no factual... Who has the burden of proof here? For which method should be used? No, as to what the weight is. Who has the burden of proof to establish the correct weight? Well, New Image has the burden to establish the weight. It has the burden to declare the proper weight here by law, which it didn't do to begin with. It declared it 0.75 weight. So it didn't even do that to begin with. New Image has the burden, as New Quarter, to declare the proper weight. They have the burden of proof in a trade court proceeding to establish the weight? They claim X weight when they're importing. Do they have the burden to establish that weight is correct, or do you have the burden to show it's wrong? They have the burden to show that's the rate of their product that they're importing. And again, what they declared was 0.75. That's not even what they ultimately ended up wanting relief on. Yes, but when customs rejects their declared weight and comes up with their own weight, isn't it your burden, and I understand there's some kind of presumption of correctness there, but isn't it your burden to prove that your alternative weight is the correct one, right? Yes, it's a burden to prove that it's, and the court to have looked at which it did, whether that's a scientifically based weight and whether it's in accordance with law. It's in accordance with law because it meets the statutory definition of rolling oil and tobacco, and it's based on a scientific methodology in accordance with U.S. Article 51. Right, but she didn't find that as a matter of fact. I get all your arguments, and also there doesn't seem to be any genuine issue that the other methods aren't based upon sound She didn't specifically find that the method you used was scientifically sound. Doesn't she have to do that as a matter of fact? She didn't. No, no, no, no. If they dispute, if they say there's a genuine issue of material fact about whether this is scientifically sound method, and she says there is no genuine issue. If we find there's a genuine issue, then I know it may seem pointless to send it back to her since she's the same person that's going to make the call, but she has to make it as a matter of fact, not as a matter of law, doesn't she? No, I think it has to be analyzed legally, whether it's under Daubert, whether it's sound and scientifically valid, which she did. She looked at the factors. No, that's not true. The Daubert ruling is not binding on the merits. All of Daubert ruling is that the evidence can come in. It doesn't mean that it has to be believed, and the fact that you got past Daubert with your methodology doesn't mean that that's correct as a matter of law, or that it has to be taken that way. They're entitled to argue at the trial, if there is a trial, that your methodology is wrong. It produces a wrong result. I would submit, even under this court's precedent under Libas, the trial court has broad discretion in looking at whether the technique or the protocol that's used is reliable. That's what this court held in Libas. Sure, but that's all a factual matter. I think she's going to come up with the exact same thing, but that all should have been found as a matter of fact, not as a matter of summary judgment. Again, this argument that at least we're presenting to you doesn't seem like it was crystallized and made clear by your opponent. I'm not even sure if this is an argument they are willing to pursue, because it sounds like they just want the 24-hour period, which I think she was correct to reject as a matter of law. But to the extent we find that the appropriate time is right after it's removed from the packaging, it is unclear to me that there is not a genuine issue about whether Cubson's method is scientifically reliable. And if there is a genuine issue, it doesn't have to go back for a trial. I would submit that there isn't a general issue. The trial court looked at the viability. This is, again, something that New Image never raised and should be weighed at this point. So that's another reason why this court, I submit, is not compelled to send this back to the trial court. New Image has never argued this. Counselor? And it still has not right now. Counselor? Yes, John. Yes. This case came to the CIT by way of a protest, correct? That's correct. So what's being challenged here, what appellant is challenging before the CIT, is Custa's decision on the protest. That's correct. So at the CIT, it's up to the appellant. The burden is on the appellant to show that Customs' protest decision was incorrect. That's correct. And it seems to me the only argument that the appellant lodged at the CIT deals with methodology, not accuracy of weight, but methodology, the methodology that Customs used. That's correct. I mean, it's changed throughout. I mean, in the complaint, it was one theory. Again, New Image moved for some reason. And Judge Rastani's decision was based on whether the methodology that Customs employed was reasonable. And this is under a Daubert ruling. Correct. So in your view, was it ever the issue whether one weight is more scientifically precise than the other, whether that was the issue? No, that was definitely never the issue before the trial court, and it hasn't been the issue on appeal here either. Correct. The appeal here before us too is whether the methodology employed by Customs in the weighing process was reasonable. Not whether it produces a scientifically precise weight, but whether the methodology itself is reasonable. Correct. I would agree with that. It can't be that all you have to show is that you've got a reasonable method. If it produces an incorrect result, right? It's reliable. If it's reliable, it's correct, it's accurate. That's what you're looking at the reliability for. Is there anything that shows that this is not the proper weight that should be used? That's why you're looking at the reliability of the methodology. I think we're out of time. Thank you. Thank you, Your Honors. Mr. Pollack, you have two minutes. I don't know whether I should start from the back and work forward. Well, I would like you to start with, if what we focused in on, if there is a material issue of whether this was Customs indirect method is a proper methodology, and it's an issue of fact that the court needs to decide, how you would, and again, I know you're arguing other things, but just assume you've lost all those other things. What would you envision a remand to look like? I mean, because it sure sounds to me like maybe this indirect method isn't going to give you the most accurate weight, but that there isn't any other one that gives you a precise scientific weight either. Then doesn't it resolve into the question of, is Customs' decision correct in using a methodology that is reasonable as a matter of law, and there's no dispute of fact about how it's applied? Well, again, as counsel points out, it's reliable, not necessarily reasonable, what's important. And the fact is that we submit that the Customs indirect method wasn't valid because it never accounted for the evaporating materials or the other ingredients. Okay, I get that. So let's agree that that's a question of fact that needs to be resolved. How do you envision the remand to look like? That perhaps the lower court, if this court is not willing to make some determination about what would be a period of time within which to do. The period of time is immediately upon removal from the package. That's the period of time. And so then the question is, if Customs' method isn't a scientifically reasonable way of getting at it, is there any other evidence in the record that would be? I mean, it doesn't sound like it to me. Well, let me just say one thing. We're not necessarily married to the .71 that the government came up with in test number one. We're just simply saying that's the test that they performed and that's the result they got. Do you want a chance to show that the factory weight is the right way to do it? I beg your pardon, sir? Do you want the chance on a remand to argue for the factory weight? As opposed to a weight after importation? As opposed to the government's indirect method. Certainly. Where did you ever make that argument below? Well, we've not argued that point about the factory weight because the factory weight is taken outside the United States before importation. So it would be improper to argue the factory weight at that point. And also, isn't the government correct that the way you measured at the factory is also the direct method that Customs was using in determining they couldn't because there was no stable weight? Well, it's the same methodology they used in lab test one. Yes, it's the same test. It was no different. It was the same scale, same vacuum. It is different in the sense that government test one waited 24 hours. The factory test is immediately after opening. And when the factory did it at that time, it was .864 in 2012. And when Customs did it, they came up with .71. So there was a representative loss of weight by the passage of time. Please stop talking about the .711. So what I was trying to ask is you're using at your factory a direct method before importation, right? Yes, sir. Customs tried to use that direct method also and came up and determined there was no stable weight that could be measured on a direct method after removing it from a package, correct? Let's just assume I'm correct. I've read the record. This is what I think they did, that there's tables that show indirect and direct. I thought this was turned off. I'm sorry. So if that direct method that you use in your factory pre-importation is okay, why wouldn't that direct method post-importation be okay? Could you repeat the question, sir? I apologize. Yours is a direct method at your factory, right? Yes, sir. And Customs did a direct test also. Yes. They just decided not to use it. Correct. Because they found it not reliable. Well, I don't know that they... No, no, no. Don't argue with me. That's a matter of fact. We're going to waste too much time. We're already way over it. As a matter of fact, they did an indirect and a direct upon opening the package. They found the direct method unreliable. Wouldn't that mean that if you think the direct method at the factory is good enough, then that should have been the method Customs used? Or, alternatively, that they're both unreliable? Well, I suspect that... Well, what I would say is that the factory weight is based on multiple weighings over a period of days, if not years, and that it's recorded by the factory at the time of manufacture. I don't... I don't see to the factory weight as being the correct weight for purposes of taxation. I think that's a question that would have to come either to this panel or back to the district court. I'm... So, did Judge Rastani, she reviewed the Daubert standards, right? The Daubert criteria? Yes. And on the basis of that, she ruled that as a matter of law, that the methodology employed by Customs, in this case, produced a reliable result. Based on USP 1251, that's correct. We're not disagreeing with that. We're just simply saying that USP 1251 requires that the person performing the weighing has to allow the product to become a staple. It says it right in their instructions. And in the indirect method, it doesn't say that at all. It didn't do that. You don't challenge Judge Rastani's ruling, her Daubert ruling? We... I think we did raise that, that it's wrong. That's really the appeal here. That's your appeal, isn't it? Yes, sir. Your appeal is that the methodology used by Customs to weigh was incorrect. And you prefer they use your methodology. And for other reasons as well. The sample size was tiny. And counsel, that was a controversy before the CIT. Yes. As I said... I think we're out of time, unless my colleagues have further questions. Okay. Thank you, Mr. Pollack. Thank you very much. Case is submitted.